Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| GRISELL MATEO DÍAZ<br><br>Apelante<br><br>v.<br><br>ANTONIO JOSÉ LEBRÓN PÉREZ<br><br>Apelado | KLAN202401148 | Apelación Procedente del Tribunal de Primera Instancia, Sala de GUAYAMA<br><br>Caso Núm.:<br>GM2021RF00032<br><br>Sobre:<br>Divorcio (Incidente de Alimentos) |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 7 de febrero de 2025.

El 26 de diciembre de 2024, Grisell Mateo Díaz (en adelante, la apelante) sometió ante la consideración de este Tribunal de Apelaciones *Escrito de Apelación y/o Revisión* mediante el cual solicitó la revocación de la *Resolución* emitida en el caso de epígrafe con fecha del 18 de noviembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante, TPI).

Mediante el aludido dictamen, el TPI hizo suyas las determinaciones de hechos y conclusiones que la Examinadora de Pensiones Alimenticias del caso incluyó en el *Informe y Recomendaciones de la Examinadora de Pensiones Alimenticias* rendido. En consecuencia, fijó la pensión alimenticia en beneficio de los hijos menores de las partes en $698.00 mensuales desde el 5 de febrero de 2021 hasta el 31 de julio de 2021; $531.00 mensuales desde el 1 de agosto de 2021 hasta el 29 de febrero de 2024; y $744.00 mensuales a partir del mes de marzo de 2024 en adelante.[1]

---

[1] La determinación que emita el foro de instancia para resolver una solicitud de modificación de un decreto de custodia o alimentos, por cambios en las circunstancias, adjudica una reclamación entre las partes, de acuerdo con los hechos y las circunstancias existentes *en el momento* en que se dilucida y resuelve ésta y, por ende, constituye una

Número Identificador

SEN2025 _____

Examinado el expediente, y conforme al derecho aplicable que más adelante enunciaremos, resolvemos **revocar** la *Resolución* recurrida y devolver el pleito al TPI para que se calcule una nueva pensión de acuerdo a lo resuelto en esta *Sentencia*. Veamos.

**-I-**

Los hechos procesales que ocasionan la presentación del recurso de epígrafe son los siguientes:

El 5 de febrero de 2021, se sometió ante la consideración del TPI una solicitud de revisión de la pensión alimentaria establecida a favor de los hijos menores de las partes. Tras varios incidentes que no consideramos importantes discutir, el 23 de septiembre de 2024, se celebró ante la Examinadora de Pensiones Alimentarias asignada al caso (en adelante la EPA) la vista final para determinar la pensión alimentaria.

Celebrada esta audiencia, el 21 de noviembre de 2024, la EPA remitió su informe y recomendaciones. Allí, realizó las siguientes determinaciones de hechos:

1. Las partes procrearon a [GJLM], nacido el 7 de marzo de 2004, y quien tiene 20 años de edad, y [KALM] nacido el 7 de abril de 2007 y quien tiene 14 años de edad.

2. Los referidos menores de edad, se encuentran bajo la custodia de la madre.

3. La madre custodio declaró en su Planilla de Información Personal y Económica que su dirección física es **Bo. Corazón, Sector Candelaria, Calle San Judas, Casa 487, Guayama, PR 00784** y la postal es **HC 02 Box 5164, Guayama, PR 00784**. Que su fecha de nacimiento es 16 de diciembre de 1981. Se encuentra desempleada.

4. La madre custodio informa que incurre en los siguientes gastos para atender las necesidades <u>de los menores</u> de edad:

   a. Gasto relativo a la educación: **Desde el 5 de febrero del 2021 hasta el 31 de julio de 2021**; la madre custodio incurrió en un gasto por la cantidad de $358.00 mensuales. **A partir de agosto de 2021**; incurre en un gasto de educación por la cantidad de $63.00 mensuales.

---

nueva sentencia de la cual puede apelarse. <u>Figueroa v. Del Rosario</u>, 147 DPR 121, 129 (1998), reiterado en <u>Cortés Pagán v. González Colón</u>, 184 DPR 807 (2012). Siendo ello así, la apelación instada por el apelante es el recurso idóneo para auscultar la revisión judicial de la resolución emitida.

b.   Gasto de Salud: **Desde el 5 de febrero de 2021 hasta febrero de 2024**; la madre custodio incurrió en un gasto de salud de $85.00 mensuales. **A partir de marzo de 2024 en adelante**; incurre en un gasto de $170.00 mensuales.

5.   **A juicio de la Examinadora suscribiente, debe imputársele capacidad para generar un ingreso neto no menor de $1,261.00**.

6.   El padre no custodio no tiene otros hijos dependientes. Declaró en su Planilla de Información Personal y Económica que su dirección, física y postal es **1418 Doubletree Ln, APT. 1418, [Nashville], TN 37217.** Que su fecha de nacimiento es 5 de febrero de 1999 y su correo electrónico es antoniolebro79@gmail.com. Trabaja para Brady Tile & Marble Co., Inc., **PO BOX 179, TN 37334**. Por sus servicios devenga un sueldo bruto mensual de $1,950.00 que se reduce a un neto legal de $1,639.00, luego de las siguientes deducciones mandatorias: $162.00 de contribución sobre ingresos, $149.00 de seguro social/medicare. (Énfasis en el original)

Basándose en estos hechos, la EPA recomendó al TPI que fijara las siguientes pensiones alimentarias para los siguientes periodos:

- desde el 5 de febrero de 2021, hasta el 31 de julio de 2021, $698.00 mensuales;

- desde el 1 de agosto de 2021, hasta el 29 de febrero de 2024; $531.00 mensuales; y

- a partir del mes de marzo de 2024 en adelante; $744.00 mensuales.

Asimismo, recomendó que la pensión siga proveyéndose mediante pago directo a la madre custodio y advertir al apelado las consecuencias de un incumplimiento con la pensión establecida. Evaluado el informe y las recomendaciones de la EPA, el 18 de noviembre de 2024, el foro primario emitió *Resolución* mediante la cual acogió, tanto el informe de la EPA, como sus recomendaciones. En desacuerdo, la apelante instó el recurso de epígrafe y alegó que el TPI se equivocó:

- al determinar que por razones de salud se le debe imputar ingresos a la madre-alimentista: Doña Grisell Mateo Díaz;

- al hacer y/o aceptar determinaciones de hecho que ya habían sido previamente determinadas por otra juez superior y/o de igual categoría;

- al aceptar que la examinadora de pensiones no permitiera a la testigo declarar sobre las condiciones y/o síntomas de salud que padecía y padece y no le permiten trabajar; y

- al no considerar las determinaciones de hecho sobre incapacidad determinadas previamente mediante sentencia anterior final, firme e inapelable.

Atendido el recurso, el 9 de enero de 2025, emitimos *Resolución* en la que concedimos a la parte apelada hasta el 27 de enero del año en curso para someter su alegato en oposición. Allí le advertimos que, de no comparecer, dispondríamos del asunto sin el beneficio de su comparecencia. Pese a nuestra advertencia, el señor Lebrón no ha comparecido, por lo que procedemos a resolver sin su postura.

**-II-**

*A.*

En nuestro ordenamiento jurídico, los menores de edad tienen un derecho fundamental a recibir alimentos. Este, emana de la cláusula constitucional del derecho a la vida consagrado en la Sección 7 del Artículo II de nuestra Constitución. Const. ELA Art. II, Sec. 7., Const. P.R., LPRA, Tomo 1; Díaz Ramos v. Matta Irizarry, 198 DPR 916, 923 (2017). Los tribunales tienen el deber de velar por ese derecho y asegurar el cumplimiento con las obligaciones que derivan del deber de los progenitores de alimentar a sus hijos menores de edad. *Íd.*

Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta y la asistencia médica de una persona, según la posición social de su familia, así como la educación e instrucción del alimentista. Cuando el alimentista es menor de edad, los alimentos también comprenden su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales específicas. 31 LPRA Sec. 7531.[2]

---

[2] En cuanto a las atenciones de previsión, el Código Civil de 2020 establece que estas incluyen los seguros de salud, de vida y de incapacidad, los planes de inversión para sufragar estudios secundarios o procurar una formación profesional o vocacional, así como la prestación de las garantías o medidas cautelares necesarias para lograr el desarrollo integral del alimentista. Además, si el alimentista alcanza la mayoría de edad mientras cursa ininterrumpidamente estudios profesionales o vocaciones, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo de las circunstancias particulares de cada caso.

La obligación alimentaria está expresamente consignada en el Código Civil de 2020. Así, el Artículo 558 de dicho cuerpo establece que el hijo tiene derecho a recibir alimentos por parte de ambos progenitores. 31 LPRA Sec. 7104. De igual forma, el Artículo 658 del aludido código establece que están obligados recíprocamente a proporcionarse alimentos, los ascendientes y descendientes. 31 LPRA Sec. 7541.

En cuanto a los hijos no emancipados, el Artículo 589 del Código Civil define la patria potestad como el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanza la mayoría de edad u obtienen su emancipación. 31 LPRA Sec. 7241. Sobre aquellos hijos sujetos a la patria potestad, el Artículo 590 del Código Civil establece los deberes y facultades de los padres para con sus hijos por razón de la patria potestad, entre los que se encuentra el deber de alimentarlos y proveerles lo necesario para su desarrollo y formación integral.[3] En cuanto a esta obligación de alimentar, ambos progenitores responden solidariamente. Así, si uno de ellos no cumple con su obligación de pago, el otro puede iniciar la acción de cobro a nombre del alimentista, esté o no bajo su custodia, o a nombre propio como codeudor solidario. 31 LPRA Sec. 7544.

La obligación de alimentar depende de la condición económica del padre alimentante y es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente. Umpierre Matos v. Juelle, Mejía 203 DPR 254 (2019). Ahora bien, el deber de alimentar a los hijos menores de edad no está subordinado a uno u otro artículo de nuestro Código Civil, sino a la relación paternofilial legalmente establecida. Santiago, Maisonet v. Maisonet Correa, 187 DPR 550, 561 (2012) citando a Chévere Mouriño v. Levis Goldstein, 152 DPR 492 (2000).

---

[3] 31 LPRA Sec. 7242, inciso (b).

No obstante, en atención a ese alto interés público sobre asuntos relativos a alimentos a menores de edad, fue creada mediante legislación la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, 8 LPRA sec. 501, et seq. (Ley Núm. 5). El propósito medular de la citada ley es velar que los padres cumplan las obligaciones que derivan del deber de alimentar a sus hijos menores de edad. De León Ramos v. Navarro Acevedo, 195 DPR 157(2016).

En esa dirección el Art. 18 de la Ley 5, *supra*, instituye el procedimiento a seguirse para la fijación de alimentos. En lo pertinente establece que: "[E]l Examinador celebrará la vista sobre pensión alimenticia, y dentro de un término de veinte (20) días, someterá al tribunal un informe con sus recomendaciones el cual contendrá determinaciones de hechos y conclusiones de derecho". Ahora bien, será fundamental la aplicación de Guías Mandatorias, para la determinación, revisión y modificación de las pensiones alimentarias en conformidad con las facilidades económicas de cada progenitor y las necesidades y aptitudes educacionales del alimentista. Santiago, Maisonet v. Maisonet Correa, *supra*, a las págs. 562-563.

*B.*

El cálculo de la pensión alimentaria

De conformidad con el Artículo 19 de la Ley Orgánica de la Administración para el Sustento de Menores, *supra*, se promulgaron las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico* (en adelante Guías Mandatorias).[4] La parte III de estas guías expone las instrucciones a seguirse para computar la pensión alimentaria básica. Así pues, el ingreso bruto anual de la persona custodia y aquel de la persona no custodia se determinará conforme con las siguientes reglas:

---

[4] Reglamento Núm. 9535, Departamento del Estado, 15 de febrero de 2024.

1. Para determinar el ingreso bruto anual de la persona custodia y de la no custodia se consideran todas las formas de ingreso incluidas en la definición de Ingreso(s) de este Reglamento.

2. Cuando la persona ejerza un oficio o trabajo para el cual el gobierno federal o el Gobierno de Puerto Rico haya establecido un salario mínimo por hora distinto al salario mínimo federal ordinario aplicable al resto de los trabajos u oficios o haya delimitado una jornada de trabajo a tiempo completo distinta a una de cuarenta (40) horas semanales; el ingreso bruto proveniente de salarios se computará de conformidad con la jornada a tiempo completo para el oficio o trabajo al cual se dedica la persona a base del salario por hora que, en efecto, reciba la persona o el salario mínimo establecido para el trabajo u oficio, lo que resulte mayor.

3. Cuando la persona custodia o no custodia ejerza una profesi6n/ oficio o conduzca un negocio por cuenta propia/ el ingreso bruto se determina restando a la totalidad de los beneficios económicos obtenidos en el curso del negocio, profesión u oficio, los gastos necesarios en los cuales la persona haya incurrido para obtener tales beneficios. El juzgador determinará lo que constituye un gasto necesario para desarrollar una industria o negocio a base de toda la prueba que reciba y siempre que la parte demuestre que incurrió en el gasto que reclama. En cuanto a las deducciones que la persona reclama en la planilla de contribución sobre ingresos, el juzgador determinará cuáles de ellas constituyen gastos necesarios a la luz del proceso para computar la pensión alimentaria y no estará en la obligación de restarlas para computar el ingreso bruto por el mero hecho de que la deducción se reclame durante el proceso contributivo.

4. En los casos en los que cualquiera de las personas reciba ingresos no recurrentes, según se define dicho concepto en este Reglamento, el juzgador los tomará en consideración para el año en el cual la persona los reciba.

5. Para efectos de este inciso, el año comenzará a transcurrir a partir de la fecha en la que la persona reciba dicho ingreso. En estos casos, el juzgador deberá computar una pensión alimentaria para el año en que se considerarán los ingresos no recurrentes y otra pensión alimentaria a partir del momento en el que los ingresos de la persona excluyen la partida por concepto de ingresos no recurrentes.

6. […][5]

Además de lo arriba consignado, las Guías Mandatorias permiten la imputación de ingresos. Así pues, su Artículo 8 establece que el juzgador imputará ingresos a la persona custodia o a la persona no custodia cuando:

a) Existan indicios o señales de que el ingreso de la persona es mayor al que esta informa.

b) La persona está desempleada.

---

[5] Artículo 7 de las Guías Mandatorias.

c) La persona está trabajando a tiempo parcial y el ingreso que recibe es menor al salario mínimo federal prevaleciente en Puerto Rico a base de cuarenta (40) horas semanales.

d) La persona cuenta con un ingreso bruto mensual menor al salario mínimo federal prevaleciente en Puerto Rico a base de cuarenta (40) horas semanales. Sin embargo, en aquellos casos en los que la persona trabaje a tiempo completo y aun así su ingreso sea inferior al que aquí se dispone, no se le imputará y su ingreso bruto se determinará de conformidad con lo establecido en el Artículo 7, inciso 1, de este Reglamento.

e) La persona haya reducido su capacidad productiva para eludir la responsabilidad de alimentar o haya sido despedida de su empleo por causas imputadas a esta.

De igual forma, las Guías Mandatorias en su Artículo 9 disponen cuándo no se imputarán ingresos. A tales efectos, el mencionado artículo establece que esto ocurrirá, entre otras circunstancias, cuando la persona custodia o no custodia demuestre que no puede trabajar porque su condición de salud o incapacidad se lo impide. Como regla general, se imputará el salario mínimo federal prevaleciente en Puerto Rico a base de cuarenta (40) horas semanales o una cantidad mayor, según la totalidad de la prueba que reciba el juzgador.[6]

*C.*

La apreciación de la prueba

Es una norma firmemente establecida que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Pena Rivera v. Pacheco Caraballo, 2024 TSPR 48, 213 DPR ___.

Esta deferencia judicial, está predicada en que los jueces de las salas de instancias están en mejor posición de aquilatar la prueba testifical debido a que estos tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Íd.*, al mencionar a Ortiz Ortiz v. Medtronic, 209 DPR 759, 778

---

[6] Artículo 10 de las Guías Mandatorias.

(2022) y otros. La deferencia debida a los foros primarios se extiende tanto a la adjudicación de credibilidad que éstos realizan sobre los testigos que declaran ante sí, como a las determinaciones de hechos que el juzgador de hechos realiza. Pueblo v. Negrón Ramírez, 2024 TSPR 41, 213 DPR ____, al citar a Pueblo v. Toro Martínez, 200 DPR 834 (2018) y otros. Sin embargo, a modo de excepción, los foros apelativos estamos en las mismas condiciones que el tribunal de instancia para intervenir y apreciar *de novo* la prueba documental que se haya presentado en un juicio. Id., al citar a Díaz García v. Aponte Aponte, 125 DPR 1, 3 (1989).

Es menester señalar que existe error manifiesto cuando el foro apelativo queda convencido de que existe un conflicto entre las conclusiones alcanzadas por el Tribunal de Primera Instancia y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Entiéndase pues, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. Pena Rivera v. Pacheco Caraballo, *supra*. Por su parte, el concepto de pasión, prejuicio y parcialidad han sido definido como aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio. Pueblo v. Negrón Ramírez, *supra*, al mencionar a Ortiz Ortiz v. Medtronic, *supra* y demás casos allí citados.

Aparte de lo arriba consignado, un foro apelativo puede intervenir con las determinaciones de hechos y la apreciación de la prueba si se demuestra que este incurrió en un abuso de discreción al apreciar y adjudicarla. A tales efectos, se incurre en abuso de discreción cuando el juez: "(1) ignora sin fundamento algún hecho material importante que no podía pasar por alto; (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o (3) a pesar de

examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable".

*D.*

**La admisión o exclusión de prueba**

En nuestro ordenamiento jurídico, como norma general, la evidencia pertinente es admisible. Sin embargo, cuando aplique alguna de las reglas de exclusión reconocidas o aquellas dispuestas en la Regla 403 de Evidencia, pudiera excluirse evidencia pertinente. Izagas Santos v. Family Drug Center, 182 DPR 463, 466 (2011). La mencionada regla establece qué evidencia pertinente podrá ser excluida cuando su valor probatorio queda sustancialmente superado por el riesgo de causar perjuicio indebido, de causar confusión o de causar desorientación del Jurado; la dilación indebida de los procedimientos o una innecesaria presentación de prueba acumulativa.[7]

Si una parte entiende que el tribunal admitió erróneamente evidencia debe, conforme a la Regla 104 de Evidencia, presentar una objeción oportuna, específica y correcta. En caso de que se trate de una exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. Regla 104 de Evidencia, 32 LPRA Ap. VI R. 104.

Pese a lo antes dicho, los tribunales apelativos no revocarán una sentencia por admisión errónea de evidencia, a menos que el error haya sido, "un factor decisivo o sustancial en la sentencia emitida". Regla 105 de Evidencia, 32 LPRA Ap. VI R. 105. Así, si el error se considera benigno o no perjudicial- porque la exclusión de la evidencia no hubiese producido un resultado distinto- se confirma el dictamen a pesar del error. Pueblo v.

---

[7] Regla 403 de Evidencia, 32 LPRA Ap. VI R. 403.

Santiago Irizarry, 198 DPR 35, 36 (2017) al citar a Izagas Santos v. Family

Drug Center, *supra*.

**-III-**

Tal cual ya mencionamos, mediante sus distintos señalamientos de

error la apelante cuestiona la determinación del TPI de acoger las

recomendaciones emitidas por la EPA en el informe que sometió en el caso.

Específicamente, ataca la impugnación de ingresos efectuada por la EPA en

la determinación de hecho número 5 de su informe emitido en el caso. A

tales efectos, en el tercer error señalado, indica que tal acto atiende

determinaciones de hechos que fueron ya determinadas por otro juez de

igual categoría. Similar equivocación le atribuye al TPI al aceptar que la

EPA no le permitiera declarar sobre las condiciones y/o síntomas de salud

que padecía y padece y que no le permiten trabajar y al ignorar

determinaciones de hechos sobre incapacidad ya establecidas por virtud de

una sentencia anterior final, firme e inapelable.

Luego de evaluar los planteamientos de las partes y los documentos

que conforman el apéndice, en consideración al derecho compendiado en

el párrafo anterior, resolvemos revocar la determinación apelada.

Procedemos a explicar por qué.

Con el fin de derrotar la decisión apelada, al discutir de forma

conjunta los errores que señaló, la apelante en el inciso IV de su recurso

argumenta como a continuación transcribimos:

> La resolución y el informe de la examinadora deben ser revocados
> por no ser conforme a derecho. Específicamente la parte que imputa
> capacidad para generar ingresos. El derecho positivo nos convence
> que por condiciones de salud **Doña Grisell Mateo Díaz** no se le
> pueden imputar ingresos. Su declaración esencial no fue para nada
> impugnada.

> El informe suscrito por la examinadora en ningún momento
> expresa las razones o motivos suficientes en derecho para esgrimir
> tal conclusión.

> La determinación de una pensión excónyuge declarándola
> incapacitada sin duda debió ser considerada y esta no tenía
> jurisdicción o poder legal para revocar a la juez y determinar que
> esta persona tiene capacidad de así hacerlo. De igual forma

entendemos que un juez de igual jerarquía no puede revocar esa incapacidad establecida mediante una sentencia que es final, firme e inapelable.

Nos parece que ambas determinaciones son contrarias y que este ilustre foro debe determinar cuál debe prevalecer. La falta de consistencia provocaría un desfase que desemboque en el quebrantamiento y perjuicio no solo de los menores sino el de una mujer desvalida que solicita justicia.

En adición a estos planteamientos, dentro de su relato de los hechos procesales, afirmativamente argumenta que la certificación médica sometida era admisible, que esta establecía meridianamente las condiciones que padece y que la objeción levantada frente a dicha certificación no se hizo conforme a derecho. De la misma manera, allí señala que fue un error por parte de la EPA el no permitirle hablar de sus condiciones e incluso catalogó de erróneos algunos de los datos resumidos por esta en el recuento del estado procesal del caso.[8]

Como puede apreciarse, los argumentos levantados por la apelante a los fines de impugnar la determinación de imputarle ingresos se centran en que la certificación médica sometida durante la vista ante la EPA sí era admisible y en que existe una sentencia final, firme e inapelable que estableció previamente una determinación de incapacidad. Asimismo, la apelante se enfoca en reclamar que no se le permitió declarar sobre su condición y síntomas. Inclusive, en su ataque a la determinación apelada, en la página 5 de su recurso insinúa parcialidad o prejuicio por parte de la EPA al alegar que su informe hace un recuento contrario a lo que realmente fue declarado por ella.

En cuanto a la supuesta admisibilidad de la certificación médica alegada por la apelante, nada podemos disponer. No se nos ha colocado en posición de poder conocer cuáles fueron los argumentos exactos levantados por la representación legal del apelado al momento de objetar la admisión

---

[8] Específicamente, expone que declaró que fue diagnosticada con Lupus desde el 2010 y que desde esa fecha no trabaja, no el año 2020 como indicó la EPA. También, señala que la examinadora equivocadamente expresó que ella no se toma un medicamento porque no se puede levantar y aclara que lo que ella declaró fue otra cosa.

de la certificación médica que presentó la apelante, o aquellos presentados en defensa de la pieza evidenciaria. Ello así, pues no tenemos sometida una grabación de los procedimientos llevados a cabo ante la EPA. Nuestro conocimiento de los acontecimientos del caso surge del resumen que el Informe contiene de estos.

Por la misma razón, tampoco podemos constatar si la apelante efectuó una oferta de prueba, según exige la Regla 104 de Evidencia, *supra*. Por consiguiente, la determinación hecha por la EPA en cuanto a la inadmisibilidad de la certificación médica sometida por la apelante para demostrar su incapacidad para trabajar debe permanecer intacta. De similar manera, la falta de una reproducción de la vista ante la EPA impide que podamos saber si es correcto, como señala la apelante, que el recuento de su testimonio contenido en el informe no es exacto y debe presumirse parcialidad o prejuicio.

**Ahora bien, el informe preparado por la EPA y sometido ante la consideración del TPI revela que, durante su testimonio, la apelante señaló recibir una pensión excónyuge por parte del apelado. Es nuestro parecer que, ante tal manifestación, sumadas aquellas expresiones realizadas por la apelante en cuanto a los malestares que le aquejan por sus condiciones, como mínimo la EPA debió tomar conocimiento judicial del caso de pensión excónyuge. Particularmente, sobre la *Sentencia* dictada sobre tal asunto en la cual por razón de sus enfermedades se estableció una pensión excónyuge a su favor. Al final de cuentas, no hay controversia sobre la existencia de dicha pensión y las causas por las cuales se concedió la misma.[9]**

El ignorar tal dictamen implicó imputarle una situación económica irreal a la apelante. Esto resulta en un sobre estimado en la verdadera

---

[9] Nos referimos a la *Sentencia* dictada por el Tribunal de Primera Instancia Sala Superior de Guayama el 28 de septiembre de 2023, notificada al día siguiente, en el caso GM2022RF00080, de la cual tomamos conocimiento judicial.

capacidad económica de la alimentante para cubrir las necesidades de sus hijos, cuya consecuencia será sufrida directamente por estos. No olvidemos que los principios que rigen la controversia buscan el mejor beneficio de los hijos menores de las partes.

**-IV-**

Por todo lo antes consignado, revocamos la *Resolución* recurrida y devolvemos el caso al tribunal para que se efectúe el cálculo de la pensión conforme lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones